3022, Manning against the Department of Homeland Security. Mr. Barring. Thank you, your honor. May it please the court, my name is John Barring. I represent the petitioner Charles Wayne Manning. It is our opinion that this case has, while many issues, two central ones that I would like to point out to this particular court. The performance standard, we believe, was essentially re-written by both the administrative judge in this case and affirmed by the board in doing so in their first remand. Because they did so, it had the effect of no notice being given to Mr. Manning as to what he was supposed to do in terms of successful performance. They changed the word. The administrative judge in the first initial decision stated that the performance standard was and. He was supposed to have two. He would prove successful performance under a system called acceptable error rates if he had two incidents, if he had no more than two incidents which had a negative impact and in his performance plan, the second part was or. He had no more than four without a resulting negative impact. The distinction between the administrative judge classifying it as a situation where and applies as opposed to or, which was in the original standard, has the effect of making the standard more difficult for the individual to meet. In this particular case, we don't believe that the administrative judge had that authority and that the board, in saying that they would do so, they would allow this to go ahead because Mr. Manning, they stated, did not object, had the authority to change the standard because if they change the standard, it's our contention that it would be a violation of law in which case the case would necessarily need to be cancelled and start over. Our second point, which involves... I'm not sure I understand what or how the standard was changed. It seems to me the standard was that if he committed more than two category A incidents or more than four category B incidents, he would have been held in violation of the understanding. Yes, Your Honor. Did that at any time change? Yes, Your Honor. In the first initial decision before the remand, the first initial decision... I mean, I know the language used was changed, but it's, you know, it's like more than two category A or more than four category B are unacceptable is the same thing as saying, therefore, you need no more than two A and no more than four B to show acceptable performance. It's the same thing. Well, Your Honor, respectfully, we would contend, and the reason why it was a bit difficult to at first understand it is because it is somewhat, we contend, backwards, at least under the EIBL analogy in the EIBL case, because in order to prove acceptable performance, he would have to A, have no more than two errors that would demonstrate a negative impact, or B, have no more than four without a resulting negative impact. And that's the standard set forth in the PIP. Yes, Your Honor. The administrative judge classified it as an and standard, and the board, in their ruling, in the record on page... I'll get the page for you, Your Honor. The board felt that because Mr. Manning had not objected at the time that the AJ could leave it as he had in terms of the and standard. Now, I mean, what that goes to is notice. I mean, if it's a difference, I think it's a different standard, because if you have to prove, hey, listen, I'm a good performer because I didn't have, you know, because I didn't have more than two negative impacting things, but, you know, if you have to... It's a confusing standard, to say the least. I think that what the biggest issue here is that the standard changed, and I think it is a different standard because there was a confusion regarding what... What heightened standard do you think that the AJ held him to? Well, I think in the first initial decision, the judge said, okay, here are the two errors, and therefore we're going to... We don't really need to go much further, and... Well, but there is a problem there. It's just as simple. The AJ didn't appreciate the fact that no more than two meant three, plain and simple. She found that there were two incidents and stopped, and she was reminded that no, no, no. No more than two meant you had to find three in order to sustain the action, and that's what she did on remand. Well, that was our second central point, Your Honor, was that while the board did not order... It was not she, it was he. I guess the phone's ringing. I'm sorry, Your Honor. While the board did not order the administrative judge to take hearing and testimony, it would seem to be... have been in order because the board said, hey, listen, you should consider credibility findings, and when it went back on remand, there was no... Mr. Manning did attempt to preserve his rights by, you know... He had expressed his desire for a second hearing. He had also stated that, you know, I mean, the agency stopped. The agency didn't go into trying to attempt to prove these issues. So when it came back on remand and the issues came back, and Mr. Manning stated that, you know, he wished to have a hearing, and then the agency had attempted to first shift the categories. I mean, the board rejected that approach. But how about we move one from Category B into Category A? And that was dismissed. But the big issue is that... Let me ask you a question. Certainly, Your Honor. At the first hearing where evidence was produced and there was a request for a second hearing which was denied, as I read the record, Mr. Castellanos was testified about the third incident involving the Dauphin Island dining facility. And he testified about the delays that were caused while they had employees at the facility waiting to begin. And didn't Mr. Manning at that time have an opportunity to call witnesses and induce testimony? And certainly there was evidently cross-examination about Mr. Castellanos' belief that this did create a negative impact, which went to the first prong. And wasn't that the time when Mr. Manning had an opportunity to do whatever testimony or call any witnesses that he felt he needed to rebut that? That's an excellent point, Your Honor. I think the bigger issue for Mr. Manning is... Well, let me just answer my question first. Did he have the opportunity to call witnesses? The third incident was the subject of the first hearing and he had a full opportunity to call whatever witness. He didn't know what the result was going to be. He didn't know whether they were going to pick two or pick three or pick four. He didn't know what they were going to do. So he had the opportunity at that time to put on whatever testimony he wanted, didn't he? So where's the prejudice in not getting the second hearing that he requested? The prejudice goes straight back, Your Honor, to the standard. And I know that I'm harping on that quite a bit, but I think it makes a distinction and it's something that I've thought about quite a great deal when you move from and to or. And when you have that sort of confusion, A, under 5 U.S.C. 4303, the agency couldn't have communicated correctly the standard to Mr. Manning. If he's supposed to have a standard that says you can't have acceptable error rates that are A or B, that's changed to A and B, the board says that it's acceptable because Mr. Manning didn't object. And then what happens is that the whole action, frankly, it's our opinion, would have to go right back to be cancelled because it wasn't a legitimate performance standard under 4303. That's our big point, Your Honor. I guess that's what I'm trying to get to. Okay. Let's hear from the other side. Thank you. Ms. Stern. May it please the Court. Mr. Manning argues that the board changed the performance standard from what was in his performance improvement plan. But the board did not make any change to the performance standard. It simply restated it. The performance standard told Mr. Manning that he couldn't fail to meet the acceptable error rate in either category, A or B. The board simply restated it and said, if you can't fail to meet either one, then obviously you need to meet both. And Mr. Manning clearly understood that that was the correct way to read the performance improvement plan standard because in his petition for review to the full board, his first petition for review, he actually stated the performance standard exactly that way, arguing that the agency hadn't proved that he had three incidences under category A and that that's what they needed to do to demonstrate unacceptable performance. And even in his brief on appeal to this Court, he said the board agreed with my interpretation of the performance standard in their decision remanding it to the administrative judge. So it's very clear that the board did properly interpret the performance standard that Mr. Manning agreed with that interpretation. And it's the only interpretation that makes any sense. Otherwise, Mr. Manning basically would be saying that he could make an unlimited number of errors under the more serious category as long as he didn't make more than four minor errors. That clearly wouldn't make sense. With respect to the second issue that Mr. Manning addressed during argument, and that pertains to his ability to introduce evidence after the remand, I think the Court's questions indicate they realize that, yes, the initial hearing that was held, evidence was introduced by the agency as to all five of the incidences contained in category A or listed under category A. And Mr. Manning did have an opportunity at that time to put in any evidence that he wanted to with respect to those incidences. He did testify on his own behalf. I'm not exactly sure how to pronounce this name, Mr. Puig, P-U-I-G, who was one of the employees whose actions were somewhat involved in the charges, also testified. So there was really no harm in not having a second hearing. The other argument that Mr. Manning says he would have addressed if there had been a second hearing on remand is that he says he would have been able to put in more evidence about the reasonableness of the standard and says that he wasn't able to put in that evidence even at the first hearing. But the joint appendix pages that he cites to indicates that the evidence he was actually attempting to put in did not go to the reasonableness of the performance standard. Rather, he was attempting to go back and challenge the initial performance appraisal, the negative performance appraisal that led to the agency's decision to institute the performance improvement plan in the first place. He wanted to go back and challenge that negative performance appraisal, which was not the adverse action that was before the board. And so the initiative judge said, no, we are not going to go all the way back and challenge the initial negative performance appraisal. We have the standards, we have your current unacceptable performance. That's what's before me. Those are the only arguments I think that were addressed by Mr. Manning of arguments today so far, but I know he has rebuttal and I don't. So I'll very, very briefly touch on the only other issues that he raised on appeal, and that has to do with the substantial evidence. And he argued in his brief, particularly in the reply brief, that there was not substantial evidence before the board to sustain the second and third incidences under Category A. That was being the survey, the Venice surveys, and also the dining facility. Particularly, I think he argues that there was no substantial evidence of a negative impact. The performance improvement plan did require that there be, under Category A, failures that resulted in some kind of a negative impact of timelines. But what Mr. Manning doesn't seem to recognize is that the negative impact didn't specifically have to be a missed deadline and the agency didn't even have to demonstrate that X number of days or minutes or hours were lost. It simply had to be some kind of negative impact. The agency put on evidence indicating that, in connection with both of these projects, time was of the essence. They wanted to move these projects along as fast as they could possibly move them along, even before the deadlines that were established. And in each incident, there was evidence by the agency that Mr. Manning failed to move the projects along, that he failed to have the information necessary to move the projects along, and that supervisors had to get involved, get the information so that the decisions that needed to be made could be made quickly, and that was the negative impact. So, unless there are any other questions, we request that the decision of the Board be affirmed. Thank you, Your Honor. Thank you, Ms. Stern. Mr. Berry? I'll be brief, Your Honors. Perhaps most illustrative of our particular argument is the Board's first remand in the record at page 19. In the footnote, which is what has troubled me in this decision in terms of the legality of the standard and how the Board ruled on it, the Board stated in their footnote that we note that, in defining the acceptable error rate for the supervisory leadership critical element in the PIP letter, the agency separated the allowable error rate for the two categories of errors by the word or. Because the agency proposed the appellant's removal for unacceptable performance of this critical element without even charging the appellant with committing more than four errors under the second category of errors, it is apparent. That's the key word for us. It is apparent. It is open and it is our contention that it wasn't extremely clear that the petitioner was not on notice, therefore under 5 U.S.C. 4303. As a result, that falls right into the substantial evidence argument that Ms. Stern mentioned a second ago. I don't think that you can meet the four element test for that by saying, okay, you're on notice, and it was communicated to you, and you have a reasonable opportunity to improve. So it was a difficult argument for me to review, to make, because you really have to think about how and and or interacts here. But when the board says, because it's apparent from the evidence that they can change the standard, the appellants respectfully disagree, and we request that this honorable court remand, or in the alternative, cancel the action under 4303. Thank you. Thank you, Mr. Berry. Thank you, Ms. Stern. The case is taken under subpoena.